Chief Justice Robertson
delivered the Opinion of the Court.
On the 6th of December, 1832, Edmund T. Bainbridge, then a commission merchant in Louisville, filed a bill in chancery, in the Jefferson Circuit Court, against Caldwell and Earnest, partners in trade, and also against one Ryan, the commandant of a steam boat, in which he alleged that, on the 4th of the same month, he had sold and delivered to Caldwell and Earnest, rope and bagging to the amount of two thousand two hundred and ninety-seven dollars eleven and a half cents; for which they were to have given, simultaneously with the delivery of the commodities, their promissory note, with a good in-» doi’ser resident in Louisville, on a credit of six months; that they had deposited the rope and bagging in the said steam boat (then about to leave the wharf) to be trans-. ported to New Orleans, for sale; that they were in “doubtful circumstances had, after the delivery, refused to give, the stipulated security, and had thus, by fraud and stratagem, gotten the possession of the goods, without giving any security or note: and therefore, he prayed for an injunction restraining the removal of the articles, and for a final decree for subjecting them to the payment of the price for which they had been sold..
The injunction having been granted, Caldwell and Earnest answered the bill, and virtually admitted all its allegations, excepting so much as related to the security, and to fraud, which they, in effect, denied.
The Circuit Court having dismissed the bill, without prejudice to an action at law—two questions are presented to this Court in the revision of that decree first—are the controverted allegations sufficiently supported by proof? and, secondly—had the Circuit Court jurisdiction?
Evidence.
First. The answer states that Caldwell, in the absence of Earnest, made the contract, and that, according to that agreement, “as he understood it,” no security was to be given. One witness—Mortimer Bainbridge, the plain- '• . . . ' , .. . ° , tin’s brother, swore positively and explicitly that, when Caldwell proposed to buy the rope and bagging, the plaintiff being confined to his room by severe indisposition, he (the witness,) then engaged for him in his store, sent to his room and made enquiry respecting the terms upon which he would make the sale, and received from him a memorandum in writing, fixing the price and credit, and requiring a note or bill with “a good city acceptance;” that thereupon', he communicated those terms to Caldwell, who, having agreed to them, and accordingly made the purchase, instantly commenced the removal of the goods 5 that, before all' of them had been taken away, he (the witness) went, to his brother and asked him who, would be acceptable as surety, and having been told by him, that B. R. Mcllvaine would be satisfactory, he then went to Caldwell and enquired of him as to the security he would offer, and, having received for answer, that he, would give B. R. Mcllvaine, he was requested to make put a bill o.f the quantity and price of the articles, and prepare a proper note tti be signed; that, before he completed the bill, Caldwell had hauled off all the rope and bagging, and being out when, early next rooming, he (the witness) went tp his store to have the note completed, his clerk stated that he had been directed to procure the signature of Mcllvaine; that, next day, he applied to the clerk, and was told that, in the mean time, Caldwell had instructed him to deliver a promissory note signed by himself and Earnest, without security; and that, having then become alarmed, he himself enquired of Mcllvaine, whether he would indorse the note, who declined to do so; and that this suit was immediately thereafter brought to enjoin the goods, which, in the mean time, had been placed on board of a steam boat, which was on the eve tif departure for New Orleans.
Another, and the only other witness in the case, stated that, he was in the store of the plaintiff when his brother returned to it with the written proposition, which was *213 just such as described by him in his deposition, and that he afterwards understood from him, that he had made the sale on the terms therein prescribed.
Corroborating eircumstanees,by the aid of which one deposition is deemed sufficient to sustain a material allegation of the bill, against the denial of the answer.
Upon a sale pf merchandise, far a note, bill, or the like, the delivery of the goods, and ofthe note, are acts to be simultaneously performed; &. though the purchaser. obtains possession of the goods, without giving the note, the contract is not complete until it is given— unless the seller intends to part with his title and possession before he receives the note.
*213 Now, it seems to us that, if the answer be deemed such as cannot be overruled by one unsustained witness, corroborating circumstances, sufficiently strong, have fortified the testimony of the first witness:—it is not probable that his brother would have made such a sale to men in doubtful circumstances, as they admit they were, on a credit of six months, without any security; nor that his agent, who refused to sell until he had consulted him, would have violated his special instructions in writing; nor that the clerk of the defendants would have said, that he had been directed to procure the signature of Mcllvaine, unless Caldwell had instructed him to do so; and, moreover, the fact that the deposition of that clerk was not taken, and the great anxiety of the plaintiff’s agent to hasten the execution of a note with security, and the absence of Caldwell, and the hurried translation of the goods to the steam boat, which had been expected to leave the wharf sooner than it did—; all tend still more to confirm the truth of the agent’s testimony.
We are, therefore, of the opinion, that the allegations of the bill have been sustained by sufficient proof—especially as the denial in the answer is rather general and evasive.
Second. As the delivery of the goods and that of the note were to have been concurrent acts, it was the duty of Caldwell to give the note when he took the goods; and as he did not do so, the contract was never completed, unless the facts show that the vendor intended to part with the title and possession without the note.
Whether, under the circumstances, the transitus had been completed, or whether, if it had not been, the doubtfulness of the condition of the defendants would have authorized a stoppage in transitu, are questions which we do not deem it indispensable to a just decision of this case, to consider. For we are satisfied that, according to the facts, established in such a manner as to entitle them to. full credence, the vencjor did not intend to post *214 pone the execution of the note to any period, definite or-indefinite, beyond the delivery of the goods, and to part with both the possession and title upon any confidence in the ability of the defendants to indemnify him, or in their disposition to comply specifically with their undertaking, at some future time. It seems to us that the execution of a satisfactory note was impi-operly evaded until all the rope and bagging had been taken off, and that ¿ken, or as soon afterwards as they could be deposited in the steam boat—which seems to have been done pari passu with the hauling of them from the store of the vendor— the defendants, for the first time, refused to consummate the contract; and therefore, according to a wrell established principle of the common law, as well as the civil law, the delivery should be deemed to have been conditional, and the subsequent refusal to give the promised security, should be deemed a fraud conceived when the contract was made, and which entitled the vendor to an election, either to reclaim the goods or to insist on an equitable lien on them, resulting from the legal implication that they were held in trust for his security. And this deduction, sufficiently established -by .the circumstances which have been mentioned, is fortified conclusively by the fact, that some time was necessary for ascertaining the amount of the sale and for completing the execution of the required note, of which Caldwell took advantage when he was in the act of carrying off the last load of the goods, without having before intimated any desire for any such delay, and 6f which, too, he made an unexpected and unjust use by being after-wards out of the way until all the goods had been securely placed on the steam boat just ready to leave the wharf for a distant port.
Goods are sold upon an agreement, that a note or bill with good city acceptance, shall be given for the amount: as the seller ascertains the quantity, the purchasers take away the goods, haul them to a steam boat, for exportation,' and evade giving the note or bill until the boat is on the eve of departure, and then offeringtheirown note only — a doubtful secuiity, refuse to give the required acceptance or indorser. Held, that the delivery shouldbedeemed to have been conditional, and that the seller may, at his election, either reclaim the goods, or insist on an equitable lien upon them.
And to enforce these rights, he may file his bill, and obtain an order of the chancellor to restrain the removal of. the goods,rwhieli willbesequesteréd, unless the defendant is permit ted to, and does, give bond and security to have them forthcoming'!. And upon such bill, there may be a decree for the surrender of the goods, and a sale of them, to satisfy the amount of the purchase; or, if they are not pro - duced, a decree for the amount, which may be ultimately enforced by a suit upon the bond.
*214 If we are correct in the foregoing positions—and that we are we have but little, if any doubt—then we are clear in the.opinion, that the plaintiff had a right to file his bill in Chancery, for enjoining the removal or sale of the goods, and for enforcing his equitable lien on them for the stipulated price, unless, in the mean time, that price should be paid or secured according to the contract. Leedom vs. Philips, 1 Yates' Repts. 529; Harris vs. *215 Smith, 3 Serg’t & Rawle, 20; Palmer vs. Hand, 13 Johnson’s Repts. 434; Dewolf vs. Babbit, 4 Mason’s Repts. 294; Haggarly vs. Palmer, 6 Johnson’s Ch’y Repts. 437. These cases all bear on this question, and'tend to sustain our opinion. Some of them recognise the doctrine of lien in such a case as this, and others establish the right to sue in trover or detinue for the goods, or by bill in Equity for enforcing the lien. And many other authorities, elementary and reported, might be added in support of the obvious principle which we apply,, as we think properly, to the fasts of this case. It would have been as unnecessary, as it has been unusual, to require the execution of the note prior to the delivery of the goods; and it would be as unreasonable to suppose that the plaintiff had intended to part with his property before the security had been given, as it would be to presume that the defendants Would have been liable on their note, had they given one prior to the delivery of the goods, and had the plaintiff then refused to make delivery» In either case,one of the parties would have perpetrated a fraud on the other, and, by his conduct, have left the contract incomplete.
If the bill be not sustainable in this case, it is evident that justice—the end of all law, would be frustrated, and that irreparable loss might, and probably would, be the consequence of dismissing the bill: because, had the plaintiff sued at law, either on the contract, or for the goods, it is obv ious that the legal remedy, in any form, might have been inadequate and, perhaps, altogether unavailing; and certainly he should not have been deprived of his right to elect whether he would jeopard or renounce the benefit of his contract, or would enforce his rights in the only effectual mode—that which he adopted.
It is, therefore, the opinion of this Court, that the Circuit Judge erred in dismissing the bill, and that he ought to have decreed a surrender of the rope and bagging, and a sale of them for the plaintiff’s benefit, if they could be surrendered; or payment of the stipulated price in the event of a non-production of them; and then, if payment be not effected, the plaintiff would have an adequate remedy on the injunction bond, and would thus *216 finally attain, through the instrumentality of the law* that which was contemplated by the terms of the contract, and which Caldwell artfully evaded by an unex? pected refusal to complete the agreement on his part, after he had gotten possession of the goods, by means which must be deemed to have been surreptitious, if the witnesses have sworn to nothing but the truth.
Wherefore, the decree is reversed* and the cause remandedi