THE SOUTHWESTERN FREIGHT AND COTTON PRESS COMPANY, Appellant, *v.* E. O. STANARD, Respondent.

1. *Contracts — Sales — Custom merchant, how established; when binding — Evidence.*—A custom, to be good, must be general, uniform, and notorious, and, to be binding on the parties to a transaction, must be directly known to them, or so universal and general in its character that knowledge may well be presumed; and evidence which does not tend to establish any open, uniform, and notorious rule, but simply consists of the declarations of witnesses as to what their individual opinions are, and the obligations they should have deemed resting upon them in certain circumstances, is illegal, and should be excluded.

2. *Contracts — Established custom, evidence of, for what purpose admissible; force of.*—Where a contract is made as to a matter about which there is a well-established custom, such custom is to be understood as forming a part of the contract, and may always be referred to for the purpose of showing the intention of the parties in all the particulars which are not expressed in the contract. But evidence of custom is never admissible to oppose or alter a general principle or rule, so as to make the rights and liabilities of parties other than they are at law.

3. *Sales — Orders — Negotiable instruments.*—Where the vendor of goods delivered to the vendee an order on the vendor's mill, in words and figures following, viz: "Eagle Mills, deliver to Lamb & Quinlin 200 barrels Eagle Steam flour. St. Louis, October 1st, 1867. E. O. Stanard"—*held,* that the order was not negotiable, and that the vendees could not assign to other parties any greater or different right than such vendees possessed.

4. *Contracts — Sales — Statute of frauds — Right of property, what sufficient to pass.*—If anything remains to be done, as between the seller and buyer, before the goods are to be delivered, a present right does not attach to the buyer. But separation is enough to pass the property, though weighing, measuring, or counting may afterward be necessary to adjust and determine the final amount of the price.

5. *Contracts — Sales, presumed to be for cash unless the contrary is stipulated.*—When nothing is said between a vendor and vendee as to payment, and where no time is stipulated for payment, it is understood to be a cash sale, and payment and delivery are concurrent acts, and the vendor may refuse to deliver without payment; and if payment be not immediately made, the contract becomes void.

6. *Contracts — Sales — Constructive delivery — Right of possession — Vendor's lien — Non-payment — Insolvent buyer.*—Even if the title has passed and the goods have been constructively delivered, possession could not have been coerced till payment was made, if the vendor has not surrendered possession. While he retains it his lien exists, and, though there may be a delivery which will pass the title, it will not necessarily destroy the lien. Unless credit is expressly given, which is a waiver of any right to demand immediate payment, the lien will continue to exist. So, also, if the buyer be insolvent when he demands delivery, the seller may refuse to deliver even when credit has been given.

44 71
37a 389
37a 422

44 71
45a 94

44 71
128 402

44 71
63a 77
64a 224

44 71
65a 228

44 71
69a 396
69a 624

44 71
87a 644

44 71
91a 568

44 71
92a 5203

44 71
174 1184

7. *Contracts—Sales—Delivery and acceptance, when a question for the jury.*— In doubtful cases the question of delivery and acceptance is for the jury, under instructions from the court. But where the facts are clear and undisputed, what will amount to a delivery and acceptance, or waiver or destruction of lien must be determined by the court.

*Appeal from St. Louis Circuit Court.*

The facts are fully set out in the opinion of the court.

*Jones & Anderson,* with *Dryden & Lindley,* for appellant.

I. As the right and title of the appellant to the flour in controversy is derived from Lamb & Quinlin, the main question is, was there a sufficient sale and delivery by the respondent to them, in construction of law? The delivery of this order by the defendant (the seller) to Lamb & Quinlin (the purchasers) was a delivery of the property. The law does not require manual delivery, especially in the case of ponderous or bulky articles; and if the goods be placed in the power of the buyer, or his authority as owner be acknowledged by some formal act or declaration of the seller, it will amount to a sufficient delivery. (Bass *et al.* v. Walsh, 39 Mo. 199.) The delivery must be such as the case admits; if the seller does in any case what is usual, or what the nature of the case makes convenient or proper, to pass the control of the goods from himself to the buyer, it is sufficient. (3 Pars. Cont. 44; 2 Kent's Com. 699.) To determine what would be practicable or convenient in any case, the circumstances of the case must be considered—the situation of the parties and the nature and situation of the goods sold; and where, from the nature or situation of the goods sold, manual delivery would be difficult, slight acts are sufficient to constitute a delivery. (Pars. Merc. Law, 50; Calkins v. Longwood, 17 Conn. 164; Bates v. Conkling, 10 Wend. 389; Jewett v. Warren, 12 Mass. 300.) A manual delivery is not necessary, but the law does not require parties to perform acts that would be inconvenient; "it accommodates itself to their business and to the nature of the property;" and where manual delivery would be difficult, the seller is only expected to make a constructive delivery, which may be

done by performing any act which will show an intention on his part to relinquish his claim to the goods and to transfer the right to control the same to the buyer. (Boynton v. Vesey, 24 Me. 286; Whitehouse, Ass., v. Frost, 12 East. 614.) E. O. Stanard, the vendor, was the sole owner and proprietor of the mill, and, up to the time of sale, of all the flour in it. The person in charge was his employee, and was bound to obey his orders. When he gave this order, the effect of it was to direct that employee to consider the two hundred barrels of flour the property of the purchasers, and to permit them to take it away at once. No acceptance was necessary. The sanction of an agent is not needed to make any act of his principal effectual.

II. When goods are in the warehouse, storehouse, or in the possession of a third party, an order given by the vendor and accepted by the third party would be a delivery. (Sto. on Sales, § 289; Hatch v. Bailey, 12 Cush. 27; Sahlman v. Mills, 3 Strob. 384; Stoveld v. Hughes, 14 East. 308; Whitehouse v. Frost, 12 East. 614; Sigerson v. Harker, 15 Mo. 101.) Now, an order given by a vendor on his own mill, the effect of which is a command to his employee to permit the purchaser to take the property away at once, must be deemed as good as an order given on a third party and accepted by him. In one case the order is a direction by the vendor to the third party to consider certain goods in his house the property of the purchaser, and his acceptance is but an admission of the right of the purchaser to take them out of his house. In the other case the order of the vendor is an admission that the purchaser has goods in his own house, and that he has the right to take them away. This seems to be the practical view of the question, and it is one that is supported by authority. When the elementary writers lay down the rule that when goods are in the vendor's own house the delivery of an order, so long as he actually retains possession of them, will not defeat his lien, they evidently intend to lay it down as applicable only to those cases in which it was not contemplated by the parties that there should be an immediate change of place. Whenever the terms of the contract of sale are inconsistent with the existence of a lien, as where the agreement is

that the vendee shall have immediate possession, the seller has no lien. (Story on Sales, §§ 292, 339.) In the case at bar the act of the seller in giving this unconditional order, and the act of the buyer in turning that order over to the carrier for the purpose of putting the carrier in possession of the property, that it might be forwarded at once to New York, show that it was the intention of both parties that there should be an immediate change of place.

III. It can make no difference that the property was in the mill of the vendor and not in the house of a third party. If the warehouse had belonged to a third party, and the order had been given on that third party and accepted by him, it would without doubt be held that the delivery was complete in construction of law. There is nothing in reason or in principle to make the case different simply because the goods were in the defendant's own mill and the order was given on that mill. The unconditional order shows the intention of the seller to part with the goods. The act of the purchaser in turning it over to the carrier, and applying, upon the strength of it, for a bill of lading, shows not only his intention to receive possession at once, but that he considered the order as equivalent to the possession; and when the act done shows this intention, it is sufficient, no matter what the act is. (Barrett v. Goddard, 3 Mason, 107; Chapman v. Searle, 3 Pick. 38; Scudder v. Worster, 11 Cush. 573; Frazier & Co. v. Hilliard, 3 Strob. 308; Arnold v. Delano, 4 Cush. 39.)

IV. There are decisions of the courts to the effect that a delivery which will pass title to property does not necessarily defeat a lien. But it will appear, we think, that most if not all the cases in which the courts so held were cases in which it was not intended that there should be an immediate change of place; or where it appeared from the evidence that between vendor and vendee something remained to be done to make the delivery complete—as in Arnold v. Delano, 4 Cush. 33, referred to in Sigerson v. Kahmann, 39 Mo. 206, where the buyer was to go on defendant's land within a year and take the wood away; or where it appeared by the terms of the sale that cash was a condition, and

the delivery was made *sub conditione*. But in all cases of constructive delivery, where the intention of the seller to give up his claim and to give complete possession at once to the buyer is apparent, the delivery will annul the lien. (Story on Sales, p. 323, § 290, and all the cases above referred to.)

V. The order given by defendant, either on the day or day after the day fixed for the delivery, was an admission that the goods were ready for delivery, and he can not now be permitted to contradict it. This act of his was such as to induce others to believe that the goods were ready, and to act upon that belief and to alter their circumstances. The rule of law is clear that where one by his words or conduct induces or causes another to believe in the existence of a certain state of things, and to act on that belief so as to alter his own previous position, that person is concluded from averring a different state of things existing at the same time. But if this view as to the admissibility of the evidence is incorrect, it is insisted that the other view taken must be correct; that this order, coming into the hands of the purchaser under the circumstances mentioned, is *prima facie* evidence that the flour was ready, that everything had been done to it that had to be done to it to put it into deliverable condition; and it remains for the defendant to show to the contrary. This he has failed to do; he has failed to show that any separation was necessary; he has failed to show that there was any larger number of barrels of the same brand from which it had to be separated. There is no evidence tending even to show that there was any more flour of the same sort in the defendant's mill. The brand "Eagle Steam" distinguishes it from all other flour of a different brand; that identification is sufficient. (Scudder v. Worster, 11 Cush. 573.) The "separate identity" of the goods is sufficiently shown. More than all this, the general rule that, where goods are mixed with a larger quantity of the same sort, the property does not pass, does not apply in all cases. The intention of the parties, as shown by the evidence, must be looked to; and if it appears to have been their intention that the property should pass, the fact that something remained to be done will not control that intention. (Story on Sales, § 298;

Kimberly v. Patchin, 19 N. Y. 330 ; Horr v. Barker, 8 Cal. 603 ; Whitehouse v. Frost, 12 East. 614.)

VI. It does not appear that the condition of the sale was cash, and that delivery was made *sub conditione*. At the time of the agreement nothing was said as to when payment should be made, but the acts of the parties and their previous course of dealings show that there was no such condition ; and it will be inferred from these previous dealings with each other that it was not expected that payment and delivery should be simultaneous. But even though it was a condition of the sale that the goods should be paid for on delivery, and they are delivered without demanding payment, the presumption is that payment is waived. (Smith v. Lynnes, 5 N. Y. 41 ; Carleton v. Sumner, 4 Pick. 516 ; Shindler v. Houston, 1 Den. 51.) It is submitted that the authorities referred to are conclusive that the delivery of this order after the agreement of sale was a delivery of the property, independent of any custom. And it is insisted that the evidence shows that this was a customary mode of delivering property of that description. At any rate, it may be safely said that there is evidence upon which a jury might have so found ; and for that reason, if for no other, the court erred in taking the case from the jury at the instance of the defendant.

VII. The plaintiff has, on account of a liability incurred upon the faith of this delivery, an interest in the flour, and such a right to the immediate possession as entitles it to recover ; and even should we admit that between vendor and vendee the lien remained, as between vendor and plaintiff that right is gone. The defendant delivered this order, which was the *indicia* of property, to the purchaser ; and upon this evidence of ownership the purchaser, who had accepted it as a delivery, induced the plaintiff to incur a liability. This puts the plaintiff in as good a condition as a *bona fide* purchaser, and gives to it a right to the goods which can not be defeated by any claim of the vendor. Where owners of goods voluntarily deliver them and clothe the vendee with the *indicia* of property, though under such circumstances as would authorize a rescission of the sale between the vendor and vendee, the right is gone between vendor and *bona fide*

MARCH TERM, 1869. 77

purchaser from such vendee. Both parties being innocent, the loss should fall upon the vendor who enabled his vendee to occa- sion the loss. (Gates v. Jennings, 13 Ill. 611; Hawes v. Wat- son, 2 Barn. & Cres. 540; Dows v. Green, 16 Barb. 72; Western Transportation Co. v. Marshal, 37 Barb. 514.) This order was the *indicia* of property, and was certainly *prima facie* evidence that the terms of the sale had been complied with, and that the vendor had no further claim upon the property. And the plain- tiff had the right to accept this order from the purchasers, with their indorsement,· as a delivery to it as carrier, and had the right upon it to give the bill of lading. "Strangers," as Lord Ellenborough said in Pickering v. Burt, 15 East. 42, "can only look to the acts of parties and to the external *indicia* of property."

*Slayback & Spencer*, for respondent.

The respondent claims that there never was any delivery of the flour; that he was entitled to his vendor's lien until there was a delivery; that he could not be deprived of such lien until either the purchase price was paid or actual delivery of the property. As he had not parted with the actual possession, no symbolical delivery could divest him of his lien where the purchase money remained wholly unpaid and insolvency had overtaken the vendee.

I. The evidence shows conclusively that no part of the flour changed hands — no part of the price was paid. We admit the defendant had made a sale. It was not an unconditional sale. No sale for cash is unconditional; but "if either party should refuse to perform his part of the contract, such as delivery by one party and payment of the price by the other, the other party would be entitled to rescind, and the contract may be treated as abandoned." (Sto. on Sales, §§ 424, 416.) "The non-com- pliance by one in any essential particular will entitle the other to repudiate the whole contract." (*Id.* § 415.) "If the payment of the price be a condition precedent to taking the goods, as it is in all cases where credit is not expressly or impliedly given, he (the vendee) can not take them till tender or payment thereof." (*Id.* § 403.) "And the vendee can not even tender part pay- ment and take part of the goods." (2 Blackst. Com. 448.)

6—VOL. XLIV.

And where a sale is made for cash, the purchaser can not take the goods if the vendor claim his lien; and, more than that, the vendor may rescind the whole transaction and repudiate it *in toto*. (2 Cow. 56; 2 Barn. & Ad. 329, and note; Brown on Sales, § 307; Sto. on Sales, § 225.)

II. It is contended that the delivery of the card or note of sale on 'Change was a delivery of the flour constructively; *i. e.*, a delivery in the legal sense. We deny this proposition; but even if there was a constructive or symbolical delivery, " the vendor's lien is not defeated by any constructive delivery, except it be the only practical and feasible mode of surrendering possession." (Sto. on Sales, § 339.) And in the same section, "where the goods are to remain in the warehouse of the vendor, no symbolical delivery will be sufficient to destroy his possession." "But so long as the vendor does not surrender actual possession, his lien exists, although he may have performed acts which amount to a constructive delivery, so as to pass the title or to avoid the statute. For a lien does not import a right of property in the goods sold, but only a right of possession and detainer. Therefore, a delivery which will pass the title will not necessarily destroy the lien. In no case where the vendor retains actual possession is his lien defeated." (Sto. on Sales, §§ 290, 286; Hill. on Sales, ch. 16, p. 198; Long on Sales, 268; Townley v. Crump, 4 Ad. & El. 58–63.)

III. The order given by the respondent was nothing more than a shipping note, or, at most, an invoice, which is only a mercantile name for a bill of parcels or shop-bill. But a shipping note (it has been held) does not amount to a bill of lading, which is exactly like a bill of exchange, and passes the property by indorsement, and not by delivery alone. "But a shipping note is not indorsable." (Hill. on Sales, 239; Ackerman v. Humphrey, 1 Car. & P. 53.) Stoppage *in transitu* is a kindred right to that of vendor's lien. Hence, the decisions applying to one usually apply to the other class of cases exactly. (Hill. on Sales, 209; Bentall v. Burn, 3 Barn. & Cres. 423.)

IV. The appellant claims that although by construction of law no such change had taken place, yet according to the

usage at the city of St. Louis, where the sale transpired, it had; and that among the merchants of that city the delivery of that order was a complete delivery of the property. But "a usage can not be set up in contravention of an express contract." (Yeats v. Pym, 6 Taunt. 446.) And "the usage must be so general as to afford a very strong presumption that the contract was made in view of it, or the practice and course of dealing between the parties must have been so uniform as to furnish strong evidence that they recognized and assented to it." (Story on Sales, § 230, and cases cited.) The order meant, according to the custom and usage at St. Louis, simply a sale for cash. A sale for cash, we have shown, is a conditional sale. That condition remaining unfulfilled, the title does not vest in the vendee.

*Whittelsey*, for respondent.

The plaintiff sues for trover and conversion of property; it was therefore bound to show a real or a constructive possession in itself in order to prove a conversion by the defendant. The evidence presented by the plaintiff tended to show an agreement to sell (not a sale of) two hundred barrels of flour to Lamb & Quinlin, on October 1, 1867. We say an agreement to sell, not a sale, for there was no evidence proving or tending to prove a bargain and sale of any specific lot of two hundred barrels. The agreement was to sell the flour for cash, and the defendant gave Lamb & Quinlin an order on his mill for the flour, which order was countermanded because the flour was not paid for in cash, in accordance with the terms of the sale. The order was not equivalent to a receipt or acknowledgment that defendant held the flour subject to the order of Lamb & Quinlin so that a demand and refusal to deliver would constitute a technical conversion.

I. The contract of sale which will transfer the title of the thing sold to the purchaser must be for some specific thing, identified and capable of delivery at the time of sale, else it is a contract of sale merely. In Jackson v. Hale, 14 How. 525, it was held that a warehouseman's receipt for wheat which was not really delivered to him, and which was not actually in store, gave no

title to any particular wheat so as to justify an action of replevin against a party to whom the warehouse had been transferred. This two hundred barrels of flour was never at the risk of the purchasers, Lamb & Quinlin, as it was not shown that there was any particular lot of two hundred barrels to which the contract applied; that is, the flour did not exist as a specific, identical thing — something remained to be done by the seller to identify the article sold. (Hening v. Powell, 33 Mo. 468; Bass *et al.* v. Walsh, 39 Mo. 192; Sigerson v. Kahmann, 39 Mo. 206; Gill *et al.* v. Pavenstedt *et al.*, Am. Law. Reg. Sept. 1868, p. 672; Whitehouse v. Frost, 12 East. 614; 2 Kent's Com. 468, 492, 496.)

II. Lamb & Quinlin purchased for cash, and were therefore not entitled to demand possession of the flour, had the bargain and sale been complete, until tender or payment of the price agreed; and the plaintiff, as their assignee, could be in no better position. Where chattels are sold, although the title may pass so that the property is at the risk of the purchaser, still the purchaser, if the sale be for cash, is not entitled to the possession of the thing sold until the agreed price is paid or tendered. (2 Kent's Com. 492, 496; Pars. on Sales, 44, n. 1; *Id.* 48; Sto. Cont. §§ 803, 804; Stone v. King, 7 R. I. 358.) The attempt to prove that, by the custom, a sale for cash was a sale on credit of from three to five days failed. The evidence would have been inadmissible had the custom been proved, for it would have been an attempt to contradict an express contract by evidence of usage. (Powell v. Horton, 3 Scott, 110; Humphrey v. Dale, 38 Eng. L. and Eq. 120; 1 Greenl. Ev. § 280, n. 4; 2 Phil. Ev., C. & H., ch. 8, § 2; Woodruff v. Merchants' Bank, 25 Wend. 673; 6 Hill, 174; Martin v. Hall, 26 Mo. 386.)

III. The order given by defendant on his mill was not negotiable, so as to give the assignee any better right than the assignors had. It was not drawn for money, and therefore was not a bill of exchange. It was an order for the delivery of property, and the assignee therefore took it subject to all existing equities (Gen. Stat. 1865, p. 398, § 7) as between assignors and assignees. As the respondent had the right to retain pos-

session of the flour as against the purchasers until payment or tender of the price, the plaintiff could be in no better position as their assignee. (Gill *et al.* v. Pavenstedt *et al.*, Am. Law Reg., Sept. 1868, p. 672.) The question in this case is not whether the plaintiff can maintain an action for breach of contract in refusing to deliver two hundred barrels of flour, whereby the plaintiff has sustained damage, but the action is a plain one for conversion of property, of which the plaintiff had the possession or the right to the possession. As the defendant had never parted with the possession of the property, so as to permit any equities to intervene to estop him from asserting his right to retain possession until he was paid the agreed price, the plaintiff can not complain if he has given a bill of lading acknowledging the receipt of flour not in his possession, whereby Lamb & Quinlin were enabled to deceive an · innocent party by procuring an advance of money upon faith of the bill of lading.

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought its action against the defendant for the conversion of two hundred barrels of flour. The defendant was the owner of a steam flouring mill in the city of St. Louis ; and in the latter part of September, 1867, he was at the Merchants' Exchange, and entered into an agreement with Lamb & Quinlin, then merchants of that city, to sell them two hundred barrels of flour, of the brand "Eagle Steam," at the price of thirteen dollars per barrel. The flour had to be made ready for delivery, and a day was fixed on which it was to be delivered, which was a few days subsequent to the agreement of sale. On the first day of October the parties again met, when the defendant gave to Lamb & Quinlin, the purchasers, an order written on a card, which is in the words and figures following, viz : "Eagle Mills, deliver to Lamb & Quinlin 200 barrels Eagle Steam flour. St. Louis, October 1st, 1867. E. O. Stanard."

Nothing was said, at the time the agreement was entered into or when the order was given, as to when payment should be made. There had been frequent previous dealings between the parties, and credit had been extended on purchases of flour for a few

days, but these credits were mere voluntary courtesies, and the dealings were considered as cash transactions. On the same day that the order was given, Lamb & Quinlin sold and transferred the order to the plaintiff, and received a bill of lading for the flour for transhipment to New York. Upon this plaintiff indorsed their draft for twenty-two hundred dollars, which, after being protested, it eventually had to pay.

On the evening of the day on which the order was given and transferred, plaintiff demanded the delivery of the flour, but defendant's agent, in charge of his mill, and acting by his direction and commands, refused to deliver the same, on account of Lamb & Quinlin's insolvency. On the facts, as substantially detailed above, the Circuit Court declared that the plaintiff was not entitled to recover. In consequence of this declaration the plaintiff took a non-suit, and, after an unavailing motion to have the same set aside, the cause is brought into this court by appeal.

A large mass of evidence was introduced to show a custom among the merchants that the effect of the order was to vest the title to the flour in the purchasers, and that from the time the card was handed over to them they became the absolute owners, and that the transferrence of the same to the plaintiff divested the defendant of all interest.

But this branch of the case was not made out; there was great diversity among the witnesses as to the force and meaning of the supposed custom, and, so far from tending to establish any open, uniform, and notorious rule, the most of the witnesses restricted themselves to declaring what their individual opinions were and the obligations they should have deemed resting upon them had they been placed in the defendant's situation. This, of course, was all illegal, and should have been excluded.

A custom to be good must be general, uniform, certain, and notorious; and, to be binding on parties to a transaction, must be directly known to them, or so universal and general in its character that knowledge may well be presumed. Where a contract is made as to a matter about which there is a custom well established, such custom is to be understood as forming a part of the contract, and may always be referred to for the purpose

of showing the intention of the parties in all those particulars which are not expressed in the contract. But evidence of custom, however, is never admissible to oppose or alter a general principle or rule, so as to make the rights and liabilities of parties other than they are at law. What constituted a delivery of the flour was a question of law, and the rights and liabilities of the vendor or vendee must be ascertained and fixed by the same standard.

It is insisted that the seller, by making and delivering the order to Lamb & Quinlin, clothed them with a title and enabled them to get credit with the plaintiff, and that, therefore, he should be held estopped from setting up any adverse claim, or averring anything to plaintiff's disadvantage. A conclusive answer to this is that the order was not a negotiable instrument, and the assignors were incapable of transferring to their assignee any greater or different right than they possessed.

The sale was for two hundred barrels of flour at the mills; no particular flour was designated, nor does it appear that it was ever set apart or identified. Whether it was all on hand, or formed part of a larger lot, unseparated and undistinguished, is nowhere shown in the case. If anything remains to be done, as between the seller and buyer, before the goods are to be delivered, a present right of property does not attach in the buyer. This is the universally recognized principle in the doctrine of sales. (2 Kent's Com., 11th ed., 664; Hening v. Powell, 33 Mo. 468; Hanson v. Meyer, 6 East. 614; Simmons v. Swift, 5 Barn. & Cres. 857; McDonald v. Hewitt, 15 Johns. 349; Scudder v. Worster, 11 Cush. 573; Hutchinson v. Hunter, 7 Barr, 140; Field v. Moore, Hill & Den., sup., 48.) But separation is enough to pass the property, though weighing, measuring, or counting may afterward be necessary to adjust and determine the final amount of the price. (Cunningham v. Ashbrook, 20 Mo. 533; Bass v. Walsh, 39 Mo. 192; Macomber v. Parker, 13 Pick. 183.)

The whole case shows that there was nothing said between the parties as to payment; and where no time is stipulated for payment it is understood to be a cash sale, and the payment and delivery are immediate and concurrent acts, and the vendor may refuse

to deliver without payment; and if the payment be not immediately made, the contract becomes void. (Outwater v. Dodge, 7 Cow. 85; Woods v. McGee, 7 Ohio, 128; Levan v. Smith, 1 Den. 571; Comyn's Dig., tit. Agreement (B 3); Palmer v. Head, 13 Johns. 434; Harris v. Smith, 3 Serg. & R. 20; Bainbridge v. Caldwell, 4 Dana, 213; Ferguson v. Clifford, 37 N. H. 86; Morris v. Rexford, 18 N. Y. 552; 2 Kent's Com. 665.)

Had the title passed and the flour been constructively delivered, possession could not have been coerced till payment was made. The vendor had not surrendered possession, and while he retained the same his lien existed; and although there may be a delivery which will pass the title, it will not necessarily destroy the lien. (Sto. on Sales, § 290; Arnold v. Delano, 4 Cush. 38; Sigerson v. Kahmann, 39 Mo. 206.)

Unless credit is expressly given, which is a waiver of any right to demand immediate payment, the lien will continue to exist. So, also, if the buyer be insolvent when he demands delivery, the seller may refuse to deliver even when credit has been given. (Reader v. Knatchball, 5 T. R. 218, n.) It has been held, further, that where payment for the goods sold is to be made upon delivery, in the notes of a third party, who becomes insolvent between the time of the contract and the period fixed for delivery, the seller is not bound to deliver upon a tender of such notes, though they be not entirely worthless. (Roget v. Merritt, 2 Caines, 117; Benedict v. Field, 16 N. Y. 595.

In Gill v. Pavenstedt, 7 Am. L. Reg., N. S., 672, A. purchased goods warehoused in a bonded warehouse from the importer B., in whose name they were entered. The goods were bought on credit at a specified price, and the duties were to be paid by A. as a part of the price. He had withdrawn, by permission of B., parcels of the goods at different times, paying the duties on such parcels. Before the credit expired, B. gave to A. an order on the bonded warehouse man to transfer the residue of the goods to A.'s name, which was accordingly done. As between the parties and the government, the goods still remained in B.'s name. They could only be withdrawn under the regulations of the treasury department, by a "withdrawal entry," signed by B. or by

some one authorized by him in writing. While the goods were in this condition, the purchaser, A., became insolvent. He demanded that B. should sign the necessary withdrawal entry, which the latter refused to do, except upon full payment of the price. And it was held that an act remained to be done, as between buyer and seller, of such a nature that there was no delivery, either actual or constructive, and that B. had a right of detention of the goods for the unpaid purchase money.

It is clear upon principle, reason, and authority, that the seller in the present case could not be compelled to part with his property till payment was made or tendered. But it is objected that the court erred in withdrawing the case from the jury. In doubtful cases the question of delivery and acceptance is for the jury, under proper instructions of the court. But where the facts are clear and undisputed, what will amount to delivery and acceptance, or waiver or destruction of lien, must be determined by the Court. Here there is no contest about the facts; they are few, plain, and simple, and I am unable to perceive that the court committed any error.

Judgment affirmed. Judge Bliss concurs; Judge Currier not sitting.