EARL FRUIT COMPANY, Respondent, v. JAMES MC-KINNEY, Appellant.

Kansas City Court of Appeals, February 24, 1896.

1. **Evidence**: SALES: EXPLANATION OF UNUSUAL TERMS: F. O. B. The terms, "f. o. b., Los Angeles" in a contract of sale are of doubtful import to those not engaged in commercial pursuits and require interpretation, and evidence is admissible that they have a definite, settled meaning among produce dealers at Kansas City, where the contract was made; and if such meaning is established the parties are conclusively presumed to have used the same in that particular sense.

2. ———: FRAUDS AND PERJURIES: ENTIRE AND SEVERABLE CONTRACT. A contract of sale of three car loads of cabbage to be shipped one or two days apart is *held* an entire and not a severable contract, and the acceptance of one car took the whole contract out of the statute of frauds.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*J. B. Hamner* and *Shelly Grover* for appellant.

(1) The first car load, and the other car loads in question, were separate transactions, though the contract in reference to all was made at one time. *Aldrich v. Pyatt*, 64 Barb. (N. Y.) 391; *Seymour v. Davis*, 2 Sandf. (N. Y.) 239, 244; *Price v. Lea*, 1 Barn. & Cres. 158; *Oil Co. v. Brewer*, 66 Pa. St. 351; *Moore v. Meacham*, 10 N. Y. 207; *Manufacturing Co. v. Wakefield*, 121 Mass. 91; *Hunt v. Hecht*, 8 Exc. 814; Wood on Statute of Frauds, secs. 321, 305, 325; Browne on Statute of Frauds [4 Ed.], secs. 334*a*, 335, 321*c*, 316*a*, 317, 328–330, 316*c*; 1 Reed on Statute of Frauds, sec. 295. When goods are deliverable in installments, and payment is due on each installment at delivery, then the acceptance of one installment does not take the other installments out of the statute of frauds. (2) The contract as to the two cars of cabbage in question was void under the statute of frauds. R. S. 1889, sec. 5187; Browne on Statute of Frauds [4 Ed.], secs. 294, 334*a*, 335, 336, 321*c*, 328, 329, 330, 316*c*, 316*a*, 317; *Ireland v. Johnson*, 18 Ab. Pr. (N. Y.) 392, 394; *Aldrich v. Pyatt, supra; Seymour v. Davis, supra; Price v. Lea, supra; Oil Co. v. Brewer, supra; Manufacturing Co. v. Wakefield, supra; Hunt v. Hecht, supra;* Wood on Statute of Frauds, secs. 321, 305, 325; 1 Reed, Statute of Frauds, sec. 925; *Stearns v. Washburn*, 7 Gray (Mass.), 187, 189; *Wait v. Baker*, 2 Ex. 1; *Skilling v. Bollman*, 73 Mo. 665, 670. (3) The contract was that the said two cars of cabbage were to be delivered to the defendant at Los Angeles, and so delivered free on board the cars. The contract f. o. b., Los Angeles, meant delivery to defendant there. *Silberman v. Clark*, 96 N. Y. 522; *Collender v. Dinsmore*, 55 N. Y. 200; *Duncan v. Green*, 43 Iowa, 678; *Sydam v. Clark*, 2 Sand. (N. Y.) 133; *Wolf v. Campbell*, 110 Mo. 114; *Kimball*

*v. Brawner*, 47 Mo. 398; *Fruin v. Crystal R. R.*, 89 Mo. 397; *Express Co. v. Lesem*, 39 Ill. 312, 313; 2 Kent's Com. [2 Ed.], pp. 505, 506, 507. Custom can not change an express contract. *Ib.* No delivery at Los Angeles. *Skilling v. Bollman*, 73 Mo. 665, 670; *Wait v. Baker, supra.*

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) Plaintiff was entitled to introduce evidence of custom to aid in the interpretation of the contract. *Long Bros. v. J. K. Armsby Co.*, 43 Mo. App. 253; *Kimball v. Brawner*, 47 Mo. 398; *Cotton Press Co. v. Stanard*, 44 Mo. 71; *Express Co. v. Lesem*, 39 Ill. 312; *Collender v. Dinsmore*, 55 N. Y. 200. (2) The contract was one for the sale of goods, although a portion of the cabbage shipped was at the time of making the contract still uncut in the field. *Goddard v. Binney*, 115 Mass. 450; *Lamb v. Crafts*, 12 Metc. 353; *Gardner v. Joy*, 9 Metc. 177; *Sawyer v. Ware*, 36 Ala. 675; *Atwater v. Hough*, 29 Conn. 508; *Cason v. Cheely*, 6 Ga. 554; *Garbut v. Watson*, 5 B. & Ald. 651; *Smith v. Surnam*, 9 B. & C. 561; *Pitkin v. Noyes*, 48 N. H. 294; *Edwards v. Railroad*, 54 Me. 105. (3) As such contract of sale it was an entirety and not a separate contract for each delivery. *Norrington v. Wright*, 115 U. S. 188 (204–205); *Smith v. Lewis*, 40 Ind. 98; *Smith v. Coal Co.*, 36 Mo. App. 567; *Steel & Iron Co. v. Naylor*, 9 Mo. App. 434; *Clark v. Baker*, 5 Metc. 452; *Rickey v. Tenbroeck*, 63 Mo. 563. (4) A portion of the goods sold having been accepted the statute of frauds is satisfied. *Rickey v. Ten Broeck*, 63 Mo. 563; *Austin v. Boyd*, 23 Mo. App. 317.

GILL, J.—This is a suit for damages resulting from defendant's refusal to accept and pay for a lot of cab-

bages which he.had contracted to purchase from the plaintiff. There was a verdict and judgment below in plaintiff's favor for $482.97, and defendant appealed.

Plaintiff, a corporation, is and was at the dates hereinafter mentioned, engaged in the wholesale fruit and vegetable business, with its main office at Los Angeles, California, and a branch office at Kansas City, in charge of one Rounseville. At the same time defendant McKinney, under the name of McKinney Brothers, was engaged in the fruit and produce business at Kansas City.

On April 28, 1893, Rounseville, plaintiff's agent, went to defendant's place of business in Kansas City and entered into a contract with said defendant to sell him three car loads of California cabbage. The terms of sale were ninety-five cents per hundred pounds "f. o. b., Los Angeles," the cars to be shipped two or three days apart. It was agreed that if plaintiff had any car of cabbage already shipped in this direction, such car should be sent, or diverted, to defendant. It seems that plaintiff was accustomed to ship cars to its branch houses, if it had not sufficient orders for all it had on hand, trusting to get just such orders as this one. At the time the order was taken, there was a car *en route* and plaintiff had a new bill of lading issued for this car in which it was billed to shipper's order, notify McKinney Brothers. Plaintiff thereupon drew upon defendant for the amount such car would bring, at ninety-five cents per hundred for the cabbage and thirty-five cents each for the crates, attached the bill of lading, and sent the draft forward for collection. Defendant took up the draft, paid all charges and received the cabbage. Two more cars were sent under the contract. When the second and third cars arrived, the price of cabbage in Kansas City had fallen greatly and defendant, after having first agreed to take the

cars, finally declined to do so. When he first refused to accept these two cars, he gave no reason for so doing, but subsequently based his refusal upon the ground that the cars were not billed direct to him. They were billed exactly as the first one was, to wit, shipper's order, notify McKinney Brothers.

To return again to the question of terms: Both parties agree that all that was said at the time the order was taken was that the cabbage was to be sold at ninety-five cents per hundred f. o. b., Los Angeles. Rounseville further testified that after wiring the order and receiving a telegram from the California house, accepting the same, he went to McKinney and told him that these cars would have to be sold upon the same terms as other dealings they had had; that all other shipments had been made by bills of lading drawn to shipper's order and that the quotations for cabbage had been exclusive of the price of the crates, which was always thirty-five cents apiece.

After McKinney refused to accept the two cars, plaintiff sold them and applied the proceeds of the sale to the payment of the freight and credited defendant with the balance. This action was brought for the purchase price of the cabbage, the price of the crates, and the freight from Los Angeles to Kansas City, less the amount realized from the sale of the cabbage after defendant's refusal to accept.

The petition was in two counts: In the first, the sale is alleged to have been, f. o. b., Los Angeles, California, and that by custom the expression f. o. b., Los Angeles, California, had come to mean "that the goods should be placed upon the cars at Los Angeles, California, without cost to the purchaser, and billed to shipper's order, with instructions to notify the purchaser; that a draft for the purchase price should be drawn upon the purchaser, with bill of lading attached, and

on payment or acceptance of the draft, the bill of lading should be surrendered to the purchaser."

In the second count, the action is based upon a contract of sale at eighty-five cents per hundred, upon the same terms and conditions as prior shipments and that prior shipments had been by bill of lading to shipper's order, with instructions to notify purchaser; and the drafts had been drawn with the bill of lading attached, prior terms being alleged to be exactly the same as the custom alleged to exist in the first count.

Defendant's answer was in three counts: The first is in the nature of a general denial. The second alleged that f. o. b., Los Angeles, meant a delivery at Los Angeles and a billing from there in defendant's name, and that there was no such delivery. The third count alleged that the sale of each car constituted a separate transaction, that each car was of a greater value than $30, and that defendant, having not bound himself in writing, nor accepted either of said last two cars, the contract of sale was void as to each of them by reason of the statute of frauds.

The foregoing is taken largely from plaintiff's statement of the case, which, after carefully inspecting the record, we find substantially correct.

I.   We deem it proper to state that, in this opinion, we can not attempt to follow defendant's industrious counsel in the various ramifications of their brief, which, including the statement, covers one hundred and seventy-eight pages printed matter, and which, too, states a great number and variety of points, divisions, and subdivisions. The writer has, with all the patience at his command, gone over this very elaborate brief. But if we should undertake to write up these numerous points, many of which seem wholly unnecessary to a proper consideration of the merits of the controversy, it would require far more space in the

published reports than should, with any reason, be devoted to a case no more complicated than this one.

After reading the entire printed record (itself nearly two hundred pages) we find the case a simple one, with merit and justice, too, in plaintiff's demand manifested throughout. There is hardly any dispute of these propositions: that is, that in April, 1893, cabbages were selling at a high price in Kansas City— $2.75 to $3 per hundred pounds—and while it was so defendant agreed with plaintiff to purchase three car loads, to be shipped from California at the price of ninety-five cents per hundred pounds, on the cars at Los Angeles. The freight thereon added would make the article cost, at Kansas City, $1.95 per hundred pounds, which left a handsome margin in prospect. Defendant accepted without complaint the first car; but when the second and third arrived, the market had dropped, so that, instead of $2.75 or $3, the cabbage had to be sold (on defendant's refusal to receive and pay for the same) at $1.25 per hundred pounds. The defendant on the witness stand admitted that this decline in price was *one* of the causes at least that prompted him to reject the cabbage. A consideration of the testimony forces the conclusion that this fall in prices was the sole cause for declining to accept the last two cars. There was no pretense that the goods were of inferior quality, or that they were not shipped to, and arrived at, Kansas City in due time. Several days, however, after the cabbage had arrived, they were rejected on the alleged ground that plaintiff had shipped them *in its own name* from Los Angeles ("notify McKinney Brothers"), whereas they should have been billed to defendant direct, in his name. And this, with the exception of the plea of the statute of frauds, which we will notice later on, furnishes the only material defense to the action.

It must be conceded that before plaintiff can

recover it must prove that it tendered delivery of the cabbage at the place required in the contract. If the contract required a complete delivery to defendant at Los Angeles, then a delivery at Kansas City would not satisfy that requirement and plaintiff could not recover. Both parties testify that the place of delivery was not specifically stated; the contract was "ninety-five cents a hundred, f. o. b., Los Angeles." Plaintiff's position is that, according to the usage and custom among produce dealers at Kansas City, this "f. o. b., Los Angeles," at the time, meant that the goods were to be loaded on the cars at Los Angeles, free of all charges to the purchaser; were to be thence shipped to Kansas City at defendant's expense, but were to be billed in plaintiff's name, and a draft with bill of lading attached to be sent forward for collection, etc. Defendant, however, contended that "f. o. b., Los Angeles" meant, according to the custom at Kansas City, that the goods were to be delivered to defendant at Los Angeles, and from there shipped to him, in his own name, to Kansas City.

On the interpretation of these abbreviations, or technical terms, plaintiff introduced a large number of experienced produce dealers, doing business at Kansas City, who testified substantially as contended for by plaintiff; that is, that in a contract made at Kansas City, for purchase of produce to be shipped from Los Angeles, California, where "f. o. b., Los Angeles" was used, it meant, according to well established usage, that Los Angeles was simply designated as the basis point for shipment; that the goods were there to be put on cars, free of prior freight or drayage charges; that the produce was to be thence billed to shipper's order; and that bill of lading with draft attached should be forwarded to place of consignment, where the purchaser should pay or accept the draft and take up the bill of

lading and thereby get possession of the goods.   And, though defendant produced *some* evidence tending to disprove this interpretation and to sustain the claim that such abbreviated words meant simply delivery to purchaser at Los Angeles, on board cars, free of charges, yet this issue was squarely submitted to the jury and they found it in favor of plaintiff.

In their brief, however, defendant's counsel seem to attack the admissibility of the evidence which tended to explain these initials.   They seem to think the expression, "f. o. b., Los Angeles," of itself sufficiently definite and certain as to require no interpretation; though, strange to say, in defendant's answer an explanation (which is not found in the ordinary use of the language) is pleaded; and the defendant, too, introduced testimony for the purpose of establishing his interpretation; nor did he, at the time, object to such evidence offered by plaintiff.   But, however inconsistent may be defendant's attitude in this respect, it was entirely proper to admit evidence as to the customary meaning of the language used.   As was said in *Kimball v. Brawner*, 47 Mo. 398, "when a new and unusual word is used, or when a word is used in a technical or peculiar sense as applicable to any trade or calling, or to any particular class of people, evidence of usage may be employed to explain and illustrate the unusual word or technical term."   And again, in *Cotton Press Co. v. Stanard*, 44 Mo. 71:   "Where a contract is made as to a matter about which there is a custom well established, such custom is to be understood as forming a part of the contract and may always be referred to for the purpose of showing the intention of the parties in all those particulars which are not expressed in the contract."   But, as further said, in the first case above cited:   "Where the subject-matter is certain, and there is no doubt as to the import of the

terms employed, evidence of usage is not admissible in respect to what the contract expressly declares. Evidence of usage comes in to show the intention of the parties in all those particulars which are not expressed in the contract, or which are expressed in unusual or technical terms."

The foregoing quotations embody all the law we need in the disposition of the question now in hand. The matter, however, will be found more fully treated in a case decided by this court, *Long Bros. v. Armsby Co.*, 43 Mo. App. 253, wherein Judge SMITH refers to a great many authorities on the subject.

The terms "f. o. b., Los Angeles," used by these dealers, are necessarily of doubtful import to those not engaged in such commercial pursuits, and they, therefore, required interpretation. And if the evidence showed that they had a definite settled meaning, among these produce dealers at Kansas City, then the parties are conclusively presumed to have used the same in that particular sense.

II. It is further claimed that the contract for the purchase of these three car loads of cabbage was within the statute of frauds (sec. 5187, Revised Statutes, 1889), and can not, therefore, be enforced. The basis of this contention is that each car load was the subject-matter of a separate and distinct contract; and that the sale was not binding because the price of each of the two rejected cars exceeded $30, and there was no part thereof accepted, nor anything paid as earnest money to bind the bargain.

This position is not tenable. There was but one single contract of sale. It was a contract for the sale of three car loads of produce, or nothing. There was only one negotiation and agreement, and for a definite quantity of goods. It is true that they were to be delivered in installments, but this did not subdivide the

contract and destroy its entirety.. *Rickey v. Tenbroeck*, 63 Mo. 563, is decisive of this point. That was a suit to recover damages for breach of contract for the sale of fifty-two head of cattle. By the terms of the parol contract, two of the cattle were to be delivered a week after the the contract was made, and the balance were to be delivered in lots of fifteen each week thereafter. The two head were delivered, but defendant refused to accept the remainder when tendered, as per terms of the agreement, and plaintiff sued for damages. The contract was treated as an entirety and the court held that the delivery of the first installment took the case out of the statute.

This disposes of the substantial questions raised. The cause was fairly tried; there were no prejudicial rulings as to the admission or rejection of evidence; the instructions were entirely fair to the defense; the judgment, too, was manifestly for the right party, and it will be affirmed. All concur.