ROBERT M. HENING *et al.*, Defendants in Error, *v.* JOSEPH POWELL *et al.*, Plaintiffs in Error.

*Sale—Delivery.*—A sale of goods is not complete to vest in the vendee an immediate right to the property so long as anything remains to be done by the vendor. Where it was agreed that the goods should be delivered upon such boats as the purchaser might name, and the seller did so deliver the goods and notified the purchaser thereof, the delivery was complete, the title passed to the purchaser, and he became liable for the price.

*Error to St. Louis Court of Common Pleas.*

*Sharp* and *Drake*, for plaintiffs in error.

It is proven and admitted on all sides in this case that a contract was made for the sale and delivery of a certain designated lot of flour, supposed at the time to contain 1900 barrels; but after the whole lot was sold, be it more or less, it was ascertained that there were 1936 barrels. It will not be controverted that the vendor was bound to deliver the whole of the lot of flour sold before the vendee was liable to pay the price or any part of it.

Nor is it presumed that there will be any difference of opinion as to what is necessary to constitute a delivery. It is plainly stated that the vendor must part with the possession and control of the property and put in the possession of the vendee, giving him the exclusive right and power to control

and manage it. This, and nothing short of this, will constitute a delivery.

In this case the vendor has the flour in possession; he sells it; he is to place it on board certain boats, not the boats of the vendee but of a third person, and to deliver the vendee dray tickets, which and which alone enable the vendee to control it; for until this was done the flour remained in the possession and under the control of the vendor.

Now we contend that if this delivery of the dray tickets was a part of the vendor's contract, he could not maintain attachment until he had complied with it.

*Strong* and *Pearce*, for defendants in error.

The principle laid down by the court in the instructions was that if the flour was delivered on board the boats and defendants notified of that fact and payment demanded, these facts constituted a delivery; and if payment was refused, the right to the remedy by attachment was complete.

A delivery of personal property is complete when the seller has parted with the possession, and put it in the power of the buyer to take control of the property. (Long on Sales, Rand's Ed. 259, 276; Story on Sales, 306; id. on Sales, 296, 298, 299, 302; Glasgow v. Nicholson, 25 Mo. 209; Fry v. Lucas, 29 Penn. Stat. 356.)

No particular form or ceremony is required, no set of words, no special acts. By the terms of the sale in the case at bar, the flour was to be put on canal boats. This was done, and 1619 barrels of it were actually received, bills of lading taken for it, and bills of exchange drawn upon it by defendants. The delivery of that quantity was certainly complete beyond all dispute.

But defendants urged that the 315 barrels were not delivered because no dray tickets had been delivered to them. The delivery of dray tickets was no part of the contract, although Powell in the first part of his testimony says they were to be delivered. On cross-examination he admits that nothing was said about dray tickets, but it was so common a

mode of doing business that he took it for granted they were to be delivered.

Although they might have refused to receive a part of the flour until the whole was delivered, it would be the grossest injustice to permit them to accept and appropriate 1619 barrels of the flour, and then contend that plaintiffs had no right to recover in attachment for this quantity because 315 barrels had not been delivered.

BAY, Judge, delivered the opinion of the court.

This was a suit by attachment to recover $8,167.30, the value of 1934 barrels of flour, alleged to have been sold and delivered by plaintiffs to defendants in October, 1858, and which defendants agreed to pay for on delivery.

The affidavit, on which the attachment issued, stated that the defendants had failed to pay the price or value of the flour in the petition mentioned and delivered to defendants, which by contract said defendants were bound to pay upon the delivery thereof.

The defendants pleaded in abatement, that the plaintiffs never delivered to them the flour mentioned and described in the petition and affidavit, and that it was not true that they had failed to pay the price or value of said flour delivered to them, which by contract they were bound to pay on delivery. Upon the trial of the plea in abatement, the jury found for the plaintiffs. Subsequently, for the want of a plea to the merits, judgment by default was entered, and damages assessed at $8,494. In due time defendants filed their motion for a new trial upon the plea in abatement, which being overruled they sued out a writ of error. All the questions arising upon the record, grow out of the trial on the plea in abatement. The proof in the case shows that it was a cash sale, and that the sale took place on the 23d of October, 1858, at which time the flour was on the levee at St. Louis. The agreement of the parties was that the flour should be delivered on board of such boats as the defendants might designate. The defendants designated the canal boats

"B. S. Shephard" and "Progress," on which plaintiffs delivered 1934 barrels, and informed defendants of the fact, and then demanded payment, or what was equivalent thereto, which was refused. The defendants suspended payment and went to protest on the 28th of October, the day before the attachment was sued out. Dray tickets were delivered to defendants by plaintiffs on different days, for 1619 barrels, and defendants obtained bills of lading for the same, it being in proof that it is not usual to issue bills of lading except to the person who produces the dray tickets, unless a written guarantee against the same is furnished. The flour was purchased for shipment to New York, and defendants drew upon it on their consignees in New York, and negotiated the drafts for upwards of $6,000, supposing at the time that all the flour was shipped.

It was also in proof that the uniform custom in St. Louis is to deliver in such cases the dray tickets to the vendee, in order that he may have the evidence of his right to control the property, and to further enable him to obtain the necessary bills of lading. It was further proved that the shipping clerk of plaintiffs retained, by direction of plaintiffs, dray tickets for about 315 barrels, and refused to deliver them to the defendants. Defendants had been in the habit for years of purchasing flour from plaintiffs for shipment to New York, and the dray tickets were always sent to them, though nothing was said about dray tickets in regard to this purchase; but defendants expected, as a matter of course, to receive them, as it had always been usual and customary.

Upon this state of facts, the court instructed the jury, as follows :

" If the jury believe from the evidence that the flour in plaintiffs' petition mentioned was sold by plaintiffs to defendants, to be delivered on board such boats as defendants should name, and defendants named the canal boats Progress and B. S. Shephard, and that said flour was delivered by plaintiffs on board of said boats, and that said flour was to be paid for on delivery, and that, after said flour was deliv-

ered as aforesaid, defendants were informed that said flour had been placed on board of said boats, and were called on for the price of said flour and failed to pay the same, or notified the plaintiffs, or either of them, that they could not pay for the said flour, then the jury will find for the plaintiffs on the plea in abatement.

"If the jury believe from the evidence that defendants have failed to pay the price or value of flour sold and delivered to them by the plaintiffs, which by their contract or agreement they were to have paid upon delivery, then they will find for the plaintiffs.

"If the jury believe from the evidence that the flour in plaintiffs' petition mentioned was sold by plaintiffs to defendants, to be delivered on such boats as defendants should name, and that it was so delivered, and that defendants were to pay for the same on delivery, and defendants have failed to pay the price or value of said flour on request, after such delivery, then they will find for the plaintiffs."

" The question before the jury is, not whether the plaintiffs are entitled to recover the value of the flour sued for, but whether the ground of attachment, set forth in the affidavit upon which the attachment was obtained, is true. The affidavit alleges that the defendants had failed to pay the price or value in the petition mentioned and delivered to them, which by contract they were bound to pay upon the delivery. This allegation is denied by the defendants, and its truth is the question to be determined by the jury. If the jury believe from the evidence that said allegation is true, they will find for the plaintiffs; but if they do not so believe, they will find for the defendants.

"No. 3. The jury is instructed that, in order to constitute a delivery of the flour mentioned, it was necessary that the plaintiffs should have parted with the flour and the entire possession thereof, and all right to control, use and direct the disposition thereof; and if the jury believe from the evidence that plaintiffs did not so deliver 315 barrels or any other quantity of said flour, but retained the same under

their control, or retained the right and power to control the same, then there was no delivery of the part so retained."

In connection with instruction No. 3, the court further instructs the jury that if the plaintiffs placed all the flour sold to defendants aboard the boats designated by the defendants, and notified the defendants of the fact, and after such notice demanded payment of the defendants for the flour,— these facts would deprive the plaintiffs of the right to control the flour, and would confer that right and power on the defendants.

The main question in the case is, whether there was a delivery of the 315 barrels for which plaintiffs retained the dray tickets.

The theory of the court, as enunciated in the instructions given, was that if the flour was delivered on the boats designated by the defendants, and defendants notified thereof, and that defendants failed to pay for the same, or notified plaintiffs that they could not pay for the same, and that plaintiffs had parted with the possession of the flour and all right to control the disposition thereof, then the delivery was complete, and plaintiffs' cause of action accrued, notwithstanding the retention by the plaintiffs of a portion of the dray tickets. Also, that the delivery of the flour on the boats, and notice to the defendants thereof with a demand for payment, would deprive the plaintiffs of the right to control said flour, and would confer that right upon the defendants.

It has been argued with much apparent earnestness by the learned counsel for the defendants, that without the dray tickets the defendants could not obtain the necessary bills of lading; and as the plaintiffs had failed to deliver to them the tickets, or other evidences of ownership, they were unable to exercise exclusive control over the flour, and therefore there was no delivery.

It is true that the agent of the transportation company testifies that dray tickets are made the basis of bills of lading, and without their production, or a satisfactory guarantee against them, he would not, as a general thing, grant bills of

lading,—though he would have given them to the defendants in this instance if they had requested it, as he understood there was more flour on the boats than called for by the dray tickets in possession of the defendants, and, in fact, did offer to include all in the second bill of lading, but Powell refused to take bills for more than his dray tickets called for.

The fallacy of the argument consists in the fact, that it assumes that the question of delivery in a case like this is to be determined upon the information which the transportation company may have of the sale and transfer of the flour to the defendants. Whether there was a delivery or not can only be ascertained by the acts of the parties; for it is a question between them, and is in no sense dependent upon the will, knowledge or acts of the transportation company. The fact that the company might have refused, in the absence of dray tickets, to acknowledge the right of the defendants in the property does not impair or diminish that right, for it is a right conferred by the plaintiffs and not by the company. The delivery of dray tickets to the vendee may be a customary and convenient method of furnishing evidence of title, but it is certainly not necessary to perfect such title. The refusal of the company to give defendants bills of lading does not even tend to prove that they had not the legal right to control the flour and the disposition thereof.

It is conceded that no sale of goods is complete, so as to vest in the vendee an immediate right of property, so long as anything remains to be done by the vendor; but what remained to be done by the vendors in this case? Their contract was to deliver the flour on the boats to be designated by the defendants, and the defendants did designate the boats, and the flour was so delivered, and defendants notified thereof. Nothing, therefore, remained for them to do. They had fully complied with the terms of the contract, and the power to control the disposition of the property passed to the vendees. We are of opinion, therefore, that the court committed no error in the instructions given, nor in refusing to give those asked by the defendants.

Another point made by the plaintiffs in error is in reference to the action of the court respecting the return of the sheriff on the writ of attachment. It seems that the defendants' counsel, in his argument to the jury, commented upon the return of the officer, and the fact was then disclosed for the first time that the return was defective in omitting to state the entire quantity of flour attached. The court permitted the return to be amended, and also permitted plaintiffs' counsel to comment upon the return as amended. The defendants' counsel then asked the same privilege, which was refused.

The return of the sheriff was not competent evidence upon the issue submitted to the jury, and the court should not have permitted counsel to comment on the same; but as the plaintiff was permitted to refer to a defective return, no good reason can be given why the privilege should not have been extended to the opposing counsel in respect to the true and amended return. But the court told the jury that the return of the sheriff was not a matter for their consideration. The defendants, therefore, sustained no injury by the action of the court in reference thereto.

With the concurrence of the other judges, the judgment of the court below will be affirmed.