WASHBURN IRON COMPANY *vs.* EDWARD J. RUSSELL.

Worcester. Oct. 6, 1880. — April 5, 1881. COLT, MORTON & FIELD, JJ., absent.

When a vendor has carried goods to the place agreed upon between him and the vendee, and is to do nothing more in reference to them, and the vendee exercises acts of control over the goods at such place before they are attached as the property of the vendor, it is evidence tending to prove a delivery before the attachment.

TORT for the conversion of fifty tons of iron rails. The defendant, a deputy sheriff, justified under a writ in favor of the Boston and Albany Railroad Company, upon which he attached the rails as the property of the Boston, Barre and Gardner Railroad Company. Trial in the Superior Court, without a jury,

before *Dewey*, J., who reported the case for the determination of this court, in substance as follows:

It appeared in evidence that the plaintiff, a manufacturer of iron rails, had a verbal contract with the Boston, Barre and Gardner Railroad Company to furnish the latter with re-rolled iron rails, receiving in pay thereof the same number of tons of old iron rails and a certain sum of money per ton, and that under this contract the plaintiff had furnished re-rolled rails for which it had not been paid. In the night of March 5, 1879, five cars belonging to the Boston, Barre and Gardner Railroad Company having each ten tons of old iron rails intended to be delivered to the plaintiff under the contract, arrived over that railroad at its freight depot in Worcester, and remained there over night.

The next morning the freight train of said railroad company started with the cars and drew them over the track of that corporation on to a circular railway track on the land of the Boston and Albany Railroad Company, used and known as a transfer track, for the exchange of freight between the Boston and Albany Railroad Company, the Worcester and Nashua Railroad Company, and the Boston, Barre and Gardner Railroad Company. All cars coming over these last-named railroads, and to be delivered to the Boston and Albany Railroad Company, were left on said track, and all cars to be delivered by the Boston and Albany Railroad Company to either of the other corporations were likewise left on said track, and the delivering corporation did no further act with respect to the cars so delivered, but the receiving corporation took such cars from said track at its own convenience, except when, as hereafter stated, they were switched into the plaintiff's yard.

The plaintiff's mill was about eighty rods southerly of this track, and iron intended for the plaintiff and left on the transfer track was drawn therefrom by engines of the Boston and Albany Railroad Company to the plaintiff's mill, the plaintiff paying that corporation for making the transfer. The course of business was, and the intention on the present occasion was, to have the cars switched in the manner hereafter stated, with the iron on them, into the plaintiff's yard, and when unloaded they would be switched back to the transfer track, where they would be

taken again by the Boston, Barre and Gardner Railroad Company.

On the morning of March 6, shortly before the arrival of the cars, S. D. Nye, the general agent of the plaintiffs, went to the office of the Boston, Barre and Gardner Railroad Company, which is in sight of the tracks, to inquire as to the arrival of this iron, when the superintendent of the Boston, Barre and Gardner Railroad, looking out of the window, saw the cars with the iron coming, and said to Nye, There is your iron now coming. Nye immediately went to the tracks, and, when the cars had reached the transfer track, took a memorandum of the number on each of the five cars, and went to get a switchman to switch the cars over to the plaintiff's mill. The switchman started at his request with an engine for that purpose, but before the switchman arrived with the engine, and after the cars were on the transfer track, the cars and iron were both attached on suits against the Boston, Barre and Gardner Railroad Company.

It was the ordinary course of business, when cars for the Boston and Albany Railroad Company were left on the transfer track, for a switchman, who had the charge of the switching on the north side of the Boston and Albany yard, to take them at his convenience, and place them on a track in that yard, and another switchman, who had charge of the switching on the south side of the yard, would then, at his convenience, take them thence and make up the trains with them if they were going farther, or, if they were destined to the plaintiff's premises or other premises adjacent to the yard, switch them to said premises. But it appeared that frequently, when cars containing iron for the plaintiff reached the transfer track, Nye was in the habit of giving directions to the switchmen of the Boston and Albany Railroad Company as to what he wanted done with them, and the switchmen were in the habit of complying with said directions and switching them directly into the plaintiff's yard, but it was not contended that Nye had any authority over the switchmen of the Boston and Albany Railroad Company, except from this implied assent.

On March 11, 1879, the plaintiff made a demand on the defendant for said iron, which he refused to deliver.

The defendant asked the judge to rule as follows: "1. There is no evidence in this case to justify a finding that the property in question was so delivered to the plaintiff as to pass title as against the attaching creditors of the Boston, Barre and Gardner Railroad Corporation. 2. There is no evidence to authorize a finding that the place where the cars were left by the Boston, Barre and Gardner Railroad was a place where the plaintiff had a right to go or be for the purpose of receiving cars or other property, and the only finding authorized in respect to the place as a place of delivery is that it was the common place of delivery between the railroad companies, and on the evidence the only delivery that can be in law inferred from leaving the cars at that place is a delivery to the Boston and Albany Railroad Company."

The judge declined so to rule, and found that there was an intent on the part of the Boston, Barre and Gardner Railroad Company and of the plaintiff to make a delivery to the plaintiff of the iron on the transfer track, and that there was a delivery before any attachment; and found for the plaintiff.

If the finding was warranted by the evidence, judgment was to be entered thereon; otherwise, judgment for the defendant.

*A. G. Bullock*, for the defendant.

*E. B. Stoddard & F. T. Blackmer*, for the plaintiff.

LORD, J. This report presents no other question than this: Was there evidence, competent for the consideration of the tribunal which was to pass upon the fact, which tended to show a delivery of the iron in controversy? The vendor had transported it to the place where the vendee was to receive it; he had done, in reference to it, all that under any circumstances he was to do. The vendee went to the place where the vendor had left it for him; he took the numbers of the cars in which the iron was loaded, and, not being able to move the iron with his own hand, started for a locomotive engine and obtained one, which was on the way to be attached to the cars to draw them into the plaintiff's yard. There were other facts in relation to the course of business which had a bearing upon the question of delivery. These it is not important to consider. It is enough to say that, when the vendor has carried goods and left them at the place agreed upon between himself and the vendee, and is to do

nothing more in reference to them, and the vendee goes to the goods at such place, and exercises some acts of control over them before they are attached, it is evidence tending to prove a delivery before the attachment.

*Judgment for the plaintiff affirmed.*