CREELMAN LUMBER COMPANY, Appellant, v.
DeLISLE, Respondent.

St. Louis Court of Appeals, July 5, 1904.

1. **FOREIGN CORPORATIONS: Evidence.** In an action by a foreign corporation, the certificate of the Secretary of State authorizing it to do business in this State, although it was obtained after the action was begun, but before the trial of the case, was properly admitted in evidence.

2. **PRACTICE: Contract: Construction by Jury.** Although under the evidence, it was proper for the trial court to construe a contract and determine the rights of the parties, where both parties by their instruction submitted the construction of the contract and their rights thereunder to the jury, they were in no position to complain that the court did not interpret the contract and are concluded by the jury's construction.

3. ———: **Irrelevant Evidence.** In an action for the conversion of lumber which plaintiff claimed under a contract of sale, evidence offered by defendant to show a violation of the contract on the part of plaintiff in making an improper inspection of lumber other than that in controversy and by tearing down and scattering other piles of lumber than those in controversy, is error where the answer sets up no counterclaim for damages caused by plaintiff's violation of the contract.

On Motion for Rehearing.

4. **SALES: Delivery.** A contract between the plaintiff and a lumber company whereby the latter sold and agreed to deliver to plaintiff all lumber they then had on hand and all lumber to be thereafter sawed by the lumber company for a given period, at prices agreed upon for the various grades and kinds, to be delivered to the plaintiff f. o. b. at the mill, plaintiff to pay cash when measured and inspected by its authorized inspector "as loaded on cars at said mill," provided that the plaintiff should estimate the amount of lumber in completed piles on hand at the mill, should mark the lumber with plaintiff's initials and number the piles, that the lumber company should "give the plaintiff a written lease of the ground on which the said lumber is piled," and that upon receipt of said lease, the plaintiff agreed to advance the sum of $5 per thousand on subordinates for all lumber in completed piles, which advancements were to be treated as payments on lumber which plaintiff should receive

on final inspection; that plaintiff was not bound to accept and pay for all lumber cut, but only such as filled the requirements of the contract. *Held*, that the contract was not an agreement to sell in the future, but the sale was *in præsenti* as to all lumber on hand and to take effect upon lumber when manufactured, that in the absence of a contrary showing, the presumption was that the lease called for by the contract was executed, that a number of piles of lumber which were stacked, marked with plaintiff's initials and estimated with $5 per thousand paid thereon, were fully delivered to plaintiff and title passed. (**Goode, J.**, dissenting.)

Appeal from Cape Girardeau Circuit Court.—*Hon. H. C. Riley*, Judge.

Action for conversion and judgment of trial court for defendant.

REVERSED AND REMANDED.

*W. H. Miller* for appellant.

(1) In view of the pleadings the court erred in permitting defendant, over plaintiff's objection, to show condition of other lumber, previous inspection, waste, etc. McGuire v. DeFrese, 77 Mo. App. 683; Obert v. Dunn, 140 Mo. 476, 41 S. W. 901; Eddy v. Baldwin, 32 Mo. 369; Green v. Gallagher, 35 Mo. 226. (2) Evidence which tends only to confuse and obscure the real issues should never be admitted. Bank v. Bank, 64 Mo. App. 253; Cole v. Railroad, 60 Mo. 227; Lester v. Railroad, 60 Mo. 265. (3) There being no allegation in the pleading of bad inspection, waste or damage, all proof of that character should have been excluded and to refuse to do so was error reversible. Rutledge v. Railroad, 110 Mo. 312, 19 S. W. 38; Halpin Mfg. Co. v. School District, 54 Mo. App. 371; Brooks v. Blackwell, 76 Mo. 309; Cumer v. Lowe, 32 Mo. 203; Edwards v. Gibony, 51 Mo. 129; Weil v. Poston, 77 Mo. 284. (4) The element of intentional wrongdoing is not necessary to the main-

tenance of this action. Timber and Iron Co. v. Cooperage Co., 112 Mo. 389, 20 S. W. 566. (5) Wrongful assumption of the right to control is conversion. Williams v. Wall, 60 Mo. 318; McLaughlin v. Barker, 64 Mo. App. 511; Banking House v. Brooks, 52 Mo. App. 364; Koch v. Branch, 44 Mo. 546; Nuswanger v. Squire, 73 Mo. 192.

*R. B. Oliver* for respondent.

Before the appellant can recover in this action of conversion, it must have had on the first day of November of 1901: A general or special ownership in the lumber, entitling it to immediate possession; or (b) actual possession. Hale on Torts (Hornbook series), p. 404, sec. 205; Cooley on Torts (Ed. 1880), pp. 442 and 443; 2 Greenleaf Ev. (2 Ed.), secs. 636-640, p. 599; Chitty on Pleading, 150-152; Webster v. Heylman, 11 Mo. 428; Parker v. Rodes, 79 Mo. 88; Johnson-Brinkman Company v. Bank, 116 Mo. 558, 22 S. W. 813; Bank v. Tiger Tail Mill, 152 Mo. 157, 53 S. W. 902; Meyer v. Hale, 17 Mo. App. 204; Bank v. Fisher, 51 Mo. App. 54.

### STATEMENT.

Plaintiff is an Illinois corporation having its chief office in the city of Cairo in said State. The defendant is a member of a copartnership composed of himself, his brother, Alfonso DeLisle, and one Boon, doing business in New Madrid county, Missouri, under the firm name of DeLisle Bros. & Boon. The firm owns a sawmill known as the Jones Mill at Portageville, New Madrid county. On November 8, 1899, the plaintiff and DeLisle Bros. & Boon entered into a written contract whereby it was stipulated and agreed that plaintiff would take all the lumber sawed by the firm at the Jones Mill from November 8, 1899, to January 1, 1901, at prices agreed upon of various kinds and grades of

·lumber, including first and second red gum at eighteen dollars per thousand feet, and common and shipping cull gum at seven dollars per thousand feet, to be delivered to the plaintiff f. o. b. at the mill, plaintiff to pay cash, less two per cent, when measured and inspected by its authorized inspector "as loaded on cars at said mill," all lumber, except oak and ash to be delivered dry on cars. The contract contains the following provisions:

"It is further agreed between the parties to this contract that between the first and tenth day of each month, during the period of this contract, beginning December 1, 1899, said party of the first part (plaintiff) shall estimate the amount of lumber said party of the second part has in completed piles, on hand at his mill, and the lumber so estimated shall be marked F. E. C. L. Co., and each pile numbered, and said party of the second part shall give to said party of the first part a written lease of the ground, on which said lumber is piled, without expense to said party of the first part. Said lease to extend over a period sufficiently long to enable said party of the first part to ship out lumber so manufactured and sold by said party of the second part to said party of the first part, and upon receipt of said lease said party of the first part agrees to advance on said lumber the sum of five dollars per thousand feet for all lumber in completed piles, except oak and ash, and ten dollars per thousand feet on completed piles of oak and ash lumber. Said advance so made to be charged to said party of the second part, and said party of the first part is to credit said party of the second part any and all lumber shipped on said amount of money so advanced, until money so advanced has been paid to said party of the first part, and then said party of the first part agrees they will pay in cash, according to terms of this contract, any and all moneys due said party of the second part, after said money so advanced shall have been paid. It is further agreed that

said party of the first part will charge no interest to said party of the second part on said advance so made, but shall credit the full amount of the lumber shipped, until said advances so made are paid, as above mentioned.

"It is further agreed that said authorized inspector of said party of the first part shall inspect, measure and receive the above-mentioned lumber, in accordance with the terms of this contract, and render to said party of the second part, upon each car so loaded, a statement of the contents of said car, and said party of the second part shall receive from said party of the first part a credit memorandum for each and every car shipped out, promptly upon receipt of said advice from said party of the first part, at their office."

The petition, omitting caption, is as follows:

"Plaintiff, for its cause of action, says it is a corporation organized under the laws of the State of Illinois, engaged in the manufacture of lumber.

"That on the first day of November, 1901, it was, has been ever since and is now the owner of and entitled to the possession of forty-five (45) stacks of lumber stacked near the mill of DeLisle Bros. & Boon near Portageville, in New Madrid county, Missouri.

"That each of said stacks was plainly marked or branded 'F. E. C. L. Co.'

"That said forty-five (45) stacks contained 323,-880 feet of lumber of the value of eighty cents per hundred feet, or two thousand five hundred and ninety-one and forty-hundredths dollars.

"That the defendant afterwards, and while plaintiff was the owner of and entitled to the possession of said lumber, wrongfully and unlawfully converted the same to his own use, to plaintiff's damage in the said sum of $2,591.40, for which sum, together with its cost and six per cent interest thereon from the date of conversion, plaintiff prays judgment."

The answer was, first, a general denial and, second,

a statement of the written contract and the following special allegations:

"Defendant further states that the forty-five stacks of lumber described in its petition is a part of the lumber that DeLisle Bros. & Boon cut at their mill, and that plaintiff has never paid defendant or the DeLisle Bros. & Boon for manufacturing the same, and that the plaintiff's claim to ownership, in and to said forty-five stacks of lumber described in its petition is bottomed upon its contract with DeLisle Bros. & Boon, made and executed as aforesaid on the eighth day of November, 1899, and the plaintiff has no other right, title, claim or interest in and to said lumber, except what it has through said contract, if in fact it has any, and defendant denies that plaintiff has any right, title, claim or interest in said lumber.

"The defendant now states and charges that at the time of the making of said contract, on the eighth day of November, 1899, this plaintiff had not complied with sections 1024-1025 of the Revised Statutes of Missouri, and that it had not filed in the office of the Secretary of State of Missouri a copy of its charter or articles of incorporation, and has not filed in the office of said Secretary of State of Missouri a certificate or a copy of its incorporation by the Secretary of the State of Illinois. That plaintiff at the time of the institution and bringing of this suit had failed, neglected and refused to comply with said sections of the Revised Statutes of Missouri, and had failed, neglected and refused to file in the office of the Secretary of State of Missouri a copy of its charter, or articles of incorporation, or a certificate, or a copy of its incorporation, as provided in said sections. The defendant further avers that the Secretary of the State of Missouri has never given or granted to the plaintiff a certificate showing compliance on its part with the laws of the State of Missouri, authorizing it to do business in Missouri, and so the defendant now states and charges that the plaintiff's contract

made as aforesaid with DeLisle Bros. & Boon on the eighth day of November, 1899, was made and is now, in violation of the laws of the State of Missouri, and that the same can not be maintained or enforced in this court or in any other court in this State, and that the plaintiff has no right or standing in this suit, or any other suit for the enforcement of a contract made in violation of the law, and defendant now pleads these facts and provisions of said statute as a bar for the further prosecution of this cause by the plaintiff, wherefore, having fully answered, he again prays to be discharged with costs.''

The forty-five stacks of lumber mentioned in the pleadings were all gum lumber. They had been stacked by the firm, estimated by plaintiff's inspector, five dollars per thousand feet paid on the estimate, and each pile marked "F. E. C. L. Co." The amount advanced by plaintiff to the firm on this estimate was, as shown by a statement of account approved by the firm, $1,153.23. On demand made by plaintiff for this lumber, the firm refused to deliver it or any part of it and afterwards sold the lumber on its own account.

At plaintiff's request the court instructed the jury as follows:

''1. The court instructs you, gentlemen of the jury, that this is a suit brought by F. E. Creelman Lumber Company, against Ed DeLisle, in which the plaintiff charges that the defendant converted to his own use, on or about the first day of November, 1901, forty-five (45) stacks of lumber, marked 'F. E. C. L. Co.,' containing 323,880 feet, of the alleged value of $2,591.40. You are instructed as a matter of law that any wrongful act, which negatives or is inconsistent with the plaintiff's right, constitutes in law a conversion of personal property, and in this connection you are instructed that if you believe and find from the evidence that the plaintiff, F. E. Creelman Lumber Company was, on the first day of November, 1901, the owner and entitled to the

possession of forty-five (45) stacks of lumber, marked 'F. E. C. L. Co.,' and at that time, or thereafter, during such ownership, or right of the possession, the defendant, Ed DeLisle, refused to permit, upon request, plaintiff or its agents, servants or employees from removing and taking charge of said lumber, then your finding must be for the plaintiff.

"2.    The court instructs you that if you find the issues for the plaintiff, then you will assess his damages in such sum as you may believe from the evidence to have been the reasonable market value of the property proved to have been converted at the time of the conversion, not to exceed the total sum of $2,591.40.

"3.    The court instructs the jury that, should you find for the plaintiff, you will fix the value of its interest in the property at the time of the institution of the suit, and in this connection you are instructed that there may be a conversion of an interest in a property as well as the whole of the property, but in no event should your verdict exceed the amount sued for."

For the defendant the court gave the following instruction:

"The court further instructs you that, although you may believe from the evidence that the stacks of lumber described in plaintiff's petition were marked 'F. E. C. L. Co.,' yet if you further find from the testimony that the plaintiff did not accept the possession and ownership of said lumber by so branding, then and in that event the possession of said property remained in the defendant and your verdict must be for him."

The verdict was for the defendant. Plaintiff appealed.

BLAND, P. J. (after stating the facts).—1. The certificate of the Secretary of State authorizing plaintiff to do business in this State was obtained by plaintiff before the trial of the cause. Defendant objected to the introduction of any testimony by the plaintiff,

on the ground that the certificate of the Secretary of State was not issued until after the suit was commenced. This objection was untenable, under the ruling of the Supreme Court in the case of Carson-Rand Co. v. Stern, 129 Mo. 381, 31 S. W. 772, and was properly overruled.

2. The following facts were proven by plaintiff and not controverted by defendant: First, that the lumber in question was stacked by DeLisle Bros. & Boon. Second, that it was estimated by plaintiff's inspector and five dollars per thousand feet advanced on the estimate by plaintiff. In this state of the evidence, it was a question of law to be determined by the court from a proper construction of the contract as to which of the parties to the contract owned or had the right to the possession of the lumber at the time the demand was made by plaintiff on DeLisle Bros. & Boon for its delivery. Spalding v. Taylor, 1 Mo. App. 34; Miller v. Dunlap, 22 Mo. App. 97; The St. Louis Gaslight Co. v. Ins. Co., 33 Mo. App. 1. c. 385; Stewart v. Sparksman, 75 Mo. App. 106; Crawley v. Mullins, 48 Mo. 517. But both parties by their instructions submitted the construction of the contract and the right of possession thereunder of the lumber in question to the jury and are for this reason in no position to complain that the court did not interpret the contract for the jury, and are concluded by the construction the jury gave to the contract. The instruction given for the defendant was a counterpart of that asked and given by the plaintiff, and the error in the charge to the jury as to the law of the case is not available to the plaintiff on this appeal. Cady v. Coates, 101 Mo. App. 1. c. 152, 74 S. W. 424, and cases cited.

3. A mass of irrelevant and incompetent testimony was admitted, over the objection of plaintiff, which tended to show a violation of the contract by plaintiff in having made an improper inspection of lumber other than that in controversy, by tearing down

and scattering other piles of lumber, that had been put up by DeLisle Bros. & Boon, and leaving them down whereby the lumber became doty and worthless, thus entailing a loss upon the firm. No counterclaim for any damages caused by a violation of the contract on the part of the plaintiff was set up in the answer, nor was any specific violation of the contract alleged therein, hence there was no issue raised by the pleadings under which this character of evidence was relevant. The result, we think, shows that this evidence was prejudicial to plaintiff, wherefore the judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.,* concur.

### OPINION ON MOTION FOR REHEARING.

Defendant in his motion for rehearing contends that the judgment should be affirmed, notwithstanding error intervened at the trial, for the reason the contract shows that the plaintiff had no title to the lumber for the conversion of which it sued. If the jury correctly interpreted the contract then the submission of its construction to them, though an erroneous submission, was not prejudicial, but if the jury was in error in its construction of the contract then the verdict is opposed to the written evidence in the case and plaintiff's motion for new trial should have been sustained.

A construction of the contract is, by the motion for rehearing, forced upon us. By the terms of the contract the mill owners sold and agreed to deliver to the plaintiff all the lumber they then had on hand and the "entire cut of lumber manufactured at their mill from November 1, 1899, to January 1, 1901." The language of the contract is that the "party of the first part (the lumber company) hereby sells and agrees to deliver," etc. The contract was not an agreement to sell in the future but the sale was *in praesenti* as to all lumber on hand and to take effect upon lumber when manufactured. In respect to the delivery of the lumber, the con-

tract shows that the millowners agreed to lease to plaintiff a piece of ground upon which they agreed to pile or stack the lumber as sawed. It was agreed that after it was stacked, the plaintiff, between the first and tenth days of each month would have the lumber estimated in stacks and when estimated each stack should be marked F. E. C. L. Co. and each pile numbered. On these estimates plaintiff agreed to advance to the millowners five dollars per thousand on all lumber in completed piles. The contract shows that these advancements were to be treated as advance payments on the lumber which plaintiff should receive on final inspection. The contract shows that the millowners agreed to load the lumber on cars without charge to plaintiff and that the inspection of the lumber should be made by the plaintiff as it was taken from the piles or the mill to be loaded on the cars. The plaintiff was not bound to accept and pay for all lumber cut and piled, but such lumber only as filled the requirements of the contract. The contract is not skillfully drawn and contains some seemingly contradictory clauses or terms, but we think when considered as a whole, it shows the millowners sold to plaintiff at the prices agreed on all the output of the mill for the period of time mentioned in the contract; that they agreed to lease to plaintiff a piece of ground upon which they would stack such of the lumber as the contract required to be stacked and agreed to load the lumber on cars at their own expense. Plaintiff agreed to estimate the piles of lumber once a month and to advance five dollars per thousand on the lumber so estimated when in completed piles and to charge the advance to the millowners as so much paid on the purchase price of the lumber. Plaintiff did not agree to accept all lumber stacked and estimated, but agreed to advance the five dollars per thousand on the estimate and take the risk that there would be on final inspection enough

lumber filling the requirements of the contract to save it harmless for the advancements. The evidence does not show whether or not the lease of the ground called for by the contract was executed. In the absence of a contrary showing, the presumption is that it was executed and that the forty-five piles of lumber alleged to have been converted by defendant were stacked upon the plaintiff's premises. But whether this be true or not, the evidence shows the lumber had been stacked, estimated, marked with plaintiff's initials and five dollars per thousand paid on the estimate. These facts we think as between the parties shows the lumber had been delivered to plaintiff and that the title thereto had passed to it.

In Middlesex Co. v. Osgood, 4 Gray 447, the plaintiff contracted to sell the defendant all the "manure waste" which might be made at their mill for a year for three hundred and twenty-five dollars. The waste was placed in a certain barn ready for delivery to the defendant but he never demanded it nor had the plaintiff ever offered to deliver it. This was held sufficient delivery to enable the plaintiff to recover the price.

In Goddard v. Binney, 115 Mass. 450, plaintiff built a buggy for the defendant upon special order. It had the defendant's name upon it and was set apart for him in the shop and, at his request, was kept for him when it was destroyed by fire. It was held that there was such a delivery as to enable the plaintiff to recover the price.

In Means v. Williamson, 37 Me. 556, a chaise sold was in the vendor's stable where the vendee wished it to remain until he could build a shed for it. It was to be paid for in wood the following winter. The buyer never removed it or delivered any wood, but it was held a sufficient delivery to enable the vendor to recover the price.

In Beller v. Block, 19 Ark. 567, it was held that on a sale of a wagon at public auction the delivery is suffi-

cient if the wagon be pointed out and the purchaser informed that he can take it away.

In Rattary v. Cook, 50 Ala. 352, a vendor of lumber which was paid for deposited it on the river bank at a selected place and the buyer was notified that it was at his risk. It was decided that the title passed and the buyer was entitled to possession. There are a number of cases holding that the title passes on the depositing of the article at the designated place of which Washburn Iron Co. v. Russell, 130 Mass. 543; Phelps v. Hubbard, 51 Vt. 489, and Sanborn v. Benedict, 78 Ill. 309, are apt illustrations.

In Sedgwick v. Cottingham, 54 Iowa 512, plaintiff sold defendant a carload of wheat to be shipped to a named place and there delivered on the track where it was to be taken from the car by the defendant, weighed by him and paid for according to the weight. The wheat arrived at the station, was placed on a sidetrack and there destroyed by a flood before weighed. It was held the delivery was complete.

In Bogy v. Rhodes, 4 Green (Iowa) 133, the plaintiff delivered an unmeasured quantity of wood on board a flatboat to be paid for when measured at a certain rate per cord. The defendant took the boat in tow but during the voyage it was sunk and all the wood lost. It was held that, notwithstanding the wood was not measured, the title passed.

In Hening v. Powell, 33 Mo. 468, it is said: "Where it was agreed that the goods should be delivered upon such boats as the purchaser might name, and the seller did so deliver the goods and notified the purchaser thereof, the delivery was complete, the title passed to the purchaser, and he became liable for the price."

In State v. Durant, 69 Mo. App. l. c. 396, it is said: "The doctrine of the common law in reference to sale is, that if the seller has performed everything that is required of him as seller, and the property is so situ-

ated that the buyer may rightfully take possession of it at his pleasure, the title passes. Actual delivery is not necessary. Williams v. Gray, 39 Mo. 201; Southwester, etc. Co. v. Stanard, 44 Mo. 71; Hening v. Powell, supra.'' See also Wren v. Kuhler, 68 Mo. App. 680.

In Wind v. Iler, 27 L. R. A. 219, 93 Iowa 316, it was decided that the reservation of the right to inspect goods does not of itself indicate that the title shall not pass until the goods are tested.

''Weighing or measuring is not absolutely essential to a completed sale, except when necessary to define the subject-matter.'' Nash v. Brewster, 2 L. R. A. (Minn.) 409; Farmers Phosphate Co. v. Gill, 1 L. R. A. 767.

In Kauffman v. Raeder, 54 L. R. A. 247, it is said: ''All that is ordinarily required of a party to a contract who has agreed to deliver personal property upon the payment of a debt or price is that he shall put the property in some convenient place, subject to the disposal of the payer upon his compliance with the terms of the contract, and that he shall notify the promisor of the fact.''

In Weld v. Cutler, 2 Gray 195, it was held that where under a sale of a part of an entire mass of goods the purchaser is allowed to take possession of the whole for the purpose of enabling him to separate and take out the portion sold the sale and delivery are complete between the parties. See also Crofoot v. Bennett, 2 N. Y. 258. It is a matter of intention in each case and if the parties have made it sufficiently clear that they intend the property to pass at once that intention as between themselves must prevail. Logan v. LeMesurier, 6 Moore P. C. 116. If it clearly appears to have been the intention of the parties that the property should be deemed to be delivered and the title to have been passed and especially if their acts be inconsistent with any other view the mere fact that something remains to be done will not govern such intention. Riddle v. Varnum,

20 Pick. 280; McCandish v. Newman, 22 Pa. 465; Stone v. Peacock, 35 Me. 385; Fuller v. Bean, 34 N. H. 290; Kimberly v. Patchin, 19 N. Y. 230.

These cases serve to illustrate and apply the common law doctrine that as between the parties all that is required to give validity to a sale of personal property is the mutual assent of the parties to the contract. Under the terms of the contract between the millowners and plaintiff, the sale of all the lumber on hand was completed on the execution of the contract. What it manufactured after the signing of the contract, according to all the authorities, became the property of the plaintiff when it was stacked upon its premises, its quantity estimated and the piles marked with plaintiff's initials, and we conclude that the lumber which had been stacked on the premises, estimated and marked was the property of the plaintiff and that the jury misconstrued the contract. The motion for rehearing is therefore overruled. *Reyburn, J.,* concurs. *Goode, J.,* dissents from the construction of the contract given in this opinion.